## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS ACHILLES, for himself And other similarly situated employees, Plaintiff, <br><br> v. <br><br> NCR CORPORATION, MICHAEL HAYFORD, CHRISTOPHER TEDEROUS Defendants. | Civil Action No.: 3:21-cv-00682-VLB |

## FIRST AMENDED CLASS ACTION COMPLAINT

Pursuant to Conn. Practice Book § 9-7 and Connecticut's wage and hour laws,

Plaintiff, Thomas Achilles, individually and on behalf of all others similarly situated

employees, through his counsel, bring claims as a Class Action against Defendant NCR

Corporation, its subsidiaries and affiliates, Michael Hayford, and Christopher Tederous,

and alleges as follows:

1.     Defendant, NCR Corporation ("NCR"), is a corporation organized and

existing under the laws of the State of Georgia, with a principal place of business at 864

Spring Street, Atlanta, Georgia. Defendant, NCR Corporation, is registered to conduct

business in the State of Connecticut.

2.     Defendant, Michael Hayford ("Hayford"), is the President, Chief Executive

Officer, and Director of NCR. At all times relevant to this Complaint, Hayford was an

individual within NCR with the ultimate authority to set certain policies and procedures which were the direct cause of NCR's failure to pay wages as set forth below.

3.      Defendant, Christopher Tederous ("Tederous") is the Manager of NCR's Customer Engineers in the state of Connecticut, and upon information and belief, is an individual with ultimate authority within NCR to enact and enforce NCR's illegal wage practices in Connecticut, including setting schedules, including the unpaid overtime hours, determines and denies overtimes.

4.      Plaintiff, Thomas Achilles, is a resident of Connecticut and has worked for NCR in Connecticut as a non-exempt customer engineer ("Customer Engineer") during the applicable statute of limitations period.

5.      Plaintiff brings this action on behalf of himself and other similarly situated employees who currently work, or who worked as "Customer Engineers" or any other similarly titled positions in Connecticut at any time during the applicable statutory periods for NCR. (the "Class Members," Plaintiff and Class Members are collectively, the "Class")

6.      NCR is a provider of computers products and technical support services for point of sale products and services, commonly referred to as "POS", including ATM products, in the State of Connecticut and across the nation.

7.      At all relevant times herein, NCR was and is an "employer" within the meaning of Connecticut General Statute § 31-58(d).

8.      At all relevant times herein, Plaintiff and Class Members were and are "employees" within the meaning of Connecticut General Statute § 31-58(e).

9.      Plaintiff and Class Members are individuals who have worked for NCR in Connecticut as Customer Engineers or any other similarly titled position during the

statutory period. Plaintiff and Class members all shared similar job titles, training, job descriptions, job requirements and compensation plans, amongst other things.

10.    NCR, including by and through Tederous, and Tederous managed Plaintiff's and Class Members' work, including the number of hours they worked. NCR dictated, controlled and ratified the wage and hour and all related employee compensation policies.

11.    Plaintiff and all Class Members are classified by NCR as non-exempt under the Connecticut wage laws and paid an hourly rate.

12.    NCR does not have a physical business operations center in the State of Connecticut and requires Plaintiff and Class Members to keep a NCR's company vehicle assigned to them at their respective places of residence.

13.    NCR does not provide Plaintiff and Class Members with an option to park NCR's vehicle in a designated parking lot owned or rented by NCR. Thus, NCR does not incur real estate expenses associated with storing its vehicles when not in use.

14.    NCR also does not permit Plaintiff and Class Members to use the NCR vehicle assigned to them for personal use. In fact, NCR's vehicles are monitored and tracked with GPS to ensure that the vehicles are not used for personal use by Plaintiff and Class Members.

15.    At the start of each workday, Plaintiff and Class Members are required by NCR to be present in the NCR vehicle assigned to them at 7:30a.m. in order to begin work.

16.    NCR requires that Plaintiff and Class Members start the NCR vehicle assigned to them and "roll out" of their respectively residences at precisely 7:30a.m. each workday. NCR emails Plaintiff and Class Members performance reports based on compliance with this policy. For example, if Plaintiff or a Class Members leaves his or her

residence in NCR's vehicle after 7:30a.m., that employee will receive an email indicated he or she left too late.

17.     NCR requires Plaintiff and Class Members to take a 1-hour lunch break between 11:00a.m. and 2:00p.m. each shift and does not compensate them for that lunch period.

18.     Due to the amount of work Plaintiff and Class Members are expected to complete each workday to perform the duties of a Customer Engineer, Plaintiff and Class Members frequently work through their lunch period and are not compensated if they do so.

19.     NCR requires that Plaintiff and Class Members return NCR's vehicle to their respectively residences at precisely 5:30p.m. at the end of each workday. NCR emails Plaintiff and Class Members performance reports based on compliance with this policy. For example, if Plaintiff or a Class Member returns to his or her residence in NCR's vehicle before 5:30p.m., that employee will receive an email indicated he or she returned home too early.

20.     NCR does not compensate Plaintiff and Class Members for the first 30 minutes or the last 30 minutes of each workday because NCR alleges that the "commute" time to their respective first assignments are not compensable.

21.     In fact, NCR's policy states: "The first thirty (30) minutes of your commute to your first customer worksite is not compensable. At the end of your day, the last thirty (30) minutes of your commute is not compensable." (the "Policy")

22.     NCR's Policy also states: "As a general rule, at least thirty (30) minutes before the start of your shift: (1) you should check in with the Operations Center either via phone or handheld mobile device for call assignments; and (2) you should activate an incident or

update your "whereabouts". In total, these activities should take no more than one or two minutes to complete."

23.    Thus, NCR's Policy requires Plaintiff and Class Members to perform work for its benefit prior to start of the purported compensable workday and after the end of the purported compensable workday.

24.    NCR claims that Plaintiff's and Class Members' compensable shifts are 8 hours per workday, but the actual number of compensable hours worked is at least 9 hours per workday as Plaintiff and Class Members' "commute" is compensable in these circumstances.

25.    Notwithstanding, Plaintiff and Class Members perform additional work during the first 30 minutes and last 30 minutes of the workday which entitles them to be compensated for that time worked.

26.    Despite NCR maintaining that the work to be performed during the purported non-compensable travel time should only take "one or two minutes to complete," in reality Plaintiff and Class Members perform additional work for NCR's benefit in the first 30 minutes and last 30 minutes of their workdays that takes much longer. This work includes, but is not limited to, the following:

      a.    logging on and signing into their employee portal to determine their shift assignments and daily schedule;

      b.    reviewing and responding to job assignments;

      c.    reviewing and responding to emails;

      d.    checking their routes;

e.   loading and unloading their vehicles with NCR equipment, parts and tools;

f.   refueling NCR's vehicle;

g.   obtaining parts and/or tools needed for the job assignment;

h.   logging mileage and updating their employee portal;

i.   documenting estimated times of arrivals for customers;

j.   filling out timesheets; and/or

k.   performing other work that was not recorded or paid by NCR.

27.   Plaintiff and Class Members are required to undertake the above referenced tasks in order to adequately prepare for the duties and responsibilities of a Customer Engineer. This is entirely for the benefit of the Company.

28.   Under the Policy, NCR only compensates Plaintiff and Class Members for 8 hours per workday and 40 hours per work week, unless overtime pay is approved by an NCR supervisor, in this case Tederous.

29.   Plaintiff and Class Members are entitled to compensation for least 9 hours per workday and 45 hours per workweek because the non-compensable travel time Policy is unlawful under Connecticut law.

30.   NCR improperly failed to pay Plaintiff and Class Members all compensation rightfully due, including but not limited to, overtime pay, which accrued while working before and after the start of their alleged 8-hour shifts.

31.   Despite the requirement to do so, NCR failed to keep accurate records of the time actually worked by the Plaintiff and Class Members.

32.   NCR knew, and was aware at all times, of the aforementioned violations. In

fact, the failures described herein were brought to NCR's attention. In addition, NCR is a defendant is several similar cases throughout the United States.

33.    The conduct alleged above reduced NCR's labor and payroll costs to its great benefit.

34.    In 2020, NCR had an estimated New York Stock Exchange market cap of roughly $4.5 Billion.

35.    Plaintiff and Class Members have been subjected to NCR's unlawful policies and practices and are victims of NCR's scheme to deprive them of wages and overtime compensation.

36.    As a result of NCR's improper and willful failure to pay Plaintiff and Class Members in accordance with the requirements of Connecticut's wage and hour laws, Plaintiff and Class Members suffered lost wages and other damages.

## CLASS ALLEGATIONS

37.    Plaintiff, Thomas Achilles, brings this case as a class action on behalf of himself and all other similarly situated individuals pursuant to Connecticut Practice Book § 9-7 *et seq*, to recover unpaid wages, unpaid overtime compensation, unlawfully withheld wages, and statutory penalties including interest, attorneys' fees and costs, and other damages owed.

38.    NCR encouraged, required and/or permitted Plaintiff and Class Members to work more than forty (40) hours per week without the proper overtime compensation.

39.    Plaintiff brings this action for himself and on behalf of similarly situated "Customer Engineers" or any other similarly titled positions who were employed by NCR in Connecticut during the two years immediately preceding the filing of this Complaint.

40.     Class certification for the claims is appropriate under Connecticut Practice

Book §§ 9-7 and 9-8 because all of the requirements found in those Sections are met:

    a.     P.B. § 9-7(1): The class is so numerous that joinder of all members is impractical. NCR employs more than forty (40) Customer Engineers or similarly titled positions in Connecticut at any time during the applicable time period. NCR, on information and belief, have between 40 and 50 former and/or current employees and/or participants meeting the class definitions set forth above throughout the State of Connecticut.

    b.     P.B. § 9-7(2): There are numerous and substantial questions of law and fact common to members of the Class including, but not limited to, the following:

        a. Whether NCR failed to keep true and accurate time records for all hours worked by the Class Members;

        b. Whether NCR failed to compensate Class Members for all the work they required, encouraged or permitted class members to perform;

        c. Whether NCR encouraged Class Members to work before the start and at the end of their scheduled shifts without pay;

        d. Whether the work performed and/or travel time by Class Members at the start and end of their workdays was compensable under Connecticut wage law;

        e. Whether NCR failed to pay class members all compensation rightfully owed;

        f. Whether NCR failed to compensate Class members for all work performed in excess of 40 hours per work week with overtime wages;

        g. Whether NCR willfully failed to comply with Connecticut wage and hour laws; and

        h. Plaintiff anticipates NCR will raise defenses that are common to the Class.

    c.     P.B. § 9-7(3): Plaintiff's claim is typical of those of the Class Members. Plaintiff's claims encompass the challenged practices and course of conduct of NCR. Furthermore, Plaintiffs legal claims are based on the

8

same legal theories as the claims of the putative Class Members. The legal issues as to whether Connecticut wage law and the applicable regulations of the State of Connecticut Department of Labor are violated by such conduct apply equally to Plaintiff and to the Class members. Plaintiff anticipates NCR will raise defenses that are common to the Class.

d.     P.B. § 9-7(4): Plaintiff, Thomas Achilles, will fairly and adequately protect the interests of the Class. He has retained experienced counsel that are competent in the prosecution of complex litigation and who have experience acting as counsel in highly technical wage and hour litigation.

e.     P.B. § 9-8: The numerous common questions of law and fact set forth in the commonality discussion above predominate over individual questions because NCR's alleged underlying activities and impact of their policies and practices affected Class Members in the same manner: A class action is superior to other available means for the fair and efficient adjudication of this controversy because the individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for each Class member to bring individual claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for NCR and/or substantially impair or impede the ability of Class members to protect their interests.

## COUNT ONE AS TO NCR CORPORATION
### Claim for Unpaid Overtime Wages – Conn. Gen. Stat. § 31-68

1-40.   Paragraphs 1-40 above are hereby realleged and incorporated as Paragraphs 1-40 of Count One as though fully set forth herein.

41.   Conn. Gen. Stat. § 31-60, states that anyone who pays or agrees to pay to an employee less than the minimum fair wage or overtime wage shall be deemed in violation Connecticut wage law.

42.    NCR's failure to pay Plaintiff and Class Members overtime at the statutorily-mandated time-and-a-half rate of their hourly pay rate for all hours worked over 40 per week was in violation of the Connecticut Wage Act and Connecticut General Statutes section 31-68 *et seq.*.

43.    As a direct and proximate result of NCR's unlawful conduct, Plaintiff and Class Members have suffered and will continue to suffer lost wages and other damages.

44.    Plaintiff and Class Members are entitled to twice the full amount of such unpaid overtime, along with interest, costs and reasonable attorney's fees.

## COUNT TWO AS TO MICHAEL HAYFORD
### Claim for Unpaid Overtime Wages – Conn. Gen. Stat. § 31-68

1-44.    Paragraphs 1-44 above are hereby realleged and incorporated as Paragraphs 1-44 of Count Two as though fully set forth herein.

45.    At all times relevant herein, Defendant Hayford was an "employer" as defined by Conn. Gen. Stat. § 31-58(d).

46.    At all times relevant herein, Defendant Hayford was an owner, Chief Executive Officer, corporate official and/or decision maker of NCR.

47.    At all times relevant herein, Defendant Hayford had the absolute right and authority to set the hours of work and the rate of pay for Plaintiff and Class Members. Specifically, he had the right and authority to institute the Policy.

48.    At all times relevant herein, Defendant Hayford, through his implementation of the Policy, made the determination to withhold overtime pay from Plaintiff and Class Members.

49.    Accordingly, Defendant Hayford is personally liable for Plaintiff and Class Members unpaid overtime wages.

50.     Plaintiff and Class Members are entitled to twice the full amount of such unpaid overtime, along with interest, costs and reasonable attorney's fees from Defendant Hayford.

### COUNT THREE AS TO CHRISTOPHER TEDEROUS
### Claim for Unpaid Overtime Wages – Conn. Gen. Stat. § 31-68

1-50.   Paragraphs 1-50 above are hereby realleged and incorporated as Paragraphs 1-50 of Count Three as though fully set forth herein.

51.     At all times relevant herein, Defendant Tederous was an "employer" as defined by Conn. Gen. Stat. § 31-58(d).

52.     At all times relevant herein, Defendant Tederous was the Manager of NCR's Connecticut Customer Engineers, including Plaintiff and Class Members.

53.     At all times relevant herein, Defendant Tederous had the absolute right and authority to set the hours of work including requiring Plaintiff and Class Members work the overtime hours, and the rate of pay for Plaintiff and Class Members including by not permitting Plaintiff and Class Members to be paid for the overtime.

54.     Defendant Tederous was ultimately responsible for enforcing NCR's overtime policies and procedures in Connecticut and communicating those policies to Plaintiff and Class Members. He held near weekly meetings with the Customer Engineers to enforce and communicate NCR's policy of not compensating Plaintiff and Class Members for the compensable overtime further described herein. Defendant Tederous was responsible for determining and denying overtime and setting the schedules of the Plaintiff and Class members, including by scheduling them for work that they were then not paid for, and then subsequently denying them overtime for that same work.

11

55.    In addition, Defendant Tederous would review the NCR initiated performance reports to ensure Plaintiff's and Class Members' compliance with NCR's policy that they were not to return the vehicle to their home before 5:30 pm, even though according to that same policy, the were to stop being paid at 5:00 pm.

56.    At all times relevant herein, Defendant Tederous, through his implementation of the Policy, made the determination to withhold overtime pay from Plaintiff and Class Members.

57.    Accordingly, Defendant Tederous is personally liable for Plaintiff's and Class Members' unpaid overtime wages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff claims:

1.    Pursuant to Connecticut Practice Book Rules § 9-7 and 9-8, certify a Class for all individuals in Connecticut who are currently employed and classified as non-exempt, Customer Engineers, technicians or similarly titled positions or were so employed and classified by NCR, its subsidiaries or affiliated companies as non-exempt, customer engineers, technicians or other similar positions performing similar responsibilities for NCR at any time during the relevant statute of limitations period;

2.    Order NCR to furnish to undersigned counsel a list of all names, telephone numbers, addresses and e-mail addresses of all Customer Engineers, technicians or any other similarly titled position who have worked for NCR within the last three years;

3.    Appoint Aeton Law Partners, LLP as counsel for the Class;

4.    Compensatory damages, including all wages owed;

5.    Double damages pursuant to Conn. Gen. Stat. §§ 31-68 and/or 31-72;

6.    Attorney's fees pursuant to Conn. Gen. Stat. §§ 31-68 and/or 31-72;

7.    Costs;

8.    Interest; and

9.    Such other relief as the Court deems just and equitable.

**THE PLAINTIFFS,**
**THOMAS ACHILLES, individually**
**and on behalf of others similarly situated**


By:     /s/ Nate E. Baber
        Nate E. Baber
        Aeton Law Partners LLP
        311 Centerpoint Road
        Middletown, CT 06475
        T: 860-724-2160
        F: 860-724-2161
        JURIS # 433168
        nate@aetonlaw.com
        Their Attorneys

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System

/s/ Nate E. Baber CT21094
Nate Baber